IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 23- |
| v. | : | DATE FILED: |
| ROOLDY ALEXANDRE | : | VIOLATIONS:<br>18 U.S.C. § 1343 (wire fraud – 2 counts) |
| | : | Notice of forfeiture |

## INFORMATION

### COUNTS ONE AND TWO

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times material to this information:

### INTRODUCTION

1. Defendant ROOLDY ALEXANDRE was a United States Citizen, residing in the Eastern District of Pennsylvania. Between at least 2017 and September 2022, defendant ALEXANDRE was the pastor of Church 1 ("the Church"), located on Woodhaven Road, in Philadelphia, Pennsylvania.

2. As pastor of Church 1, defendant ROOLDY ALEXANDRE was the Church's only regular, paid employee. Defendant ALEXANDRE was responsible for managing the daily affairs of the Church and had primary responsibility for the Church's finances and controlled the Church's bank accounts.

3. Christella Dorval, charged elsewhere, is the sister of defendant ROOLDY ALEXANDRE, and a resident of Florida. Dorval was the owner and operator of Vitality Resort and Vitality Star Resort—which were adult living facilities located in Port St. Lucie, Florida—as well as Vitality Building Management, which was created to manage the adult living facilities.

The three companies are referred to collectively herein as the "Vitality Companies." Dorval controlled the bank accounts for the Vitality Companies.

        4.        Person 1, charged elsewhere, was a Florida resident and the president of a corporation registered in Florida.

        5.        Person 2 was a resident of the Eastern District of Pennsylvania, and President of Company 1, a faith-based organization that used the radio and the internet to reach its audience. Person 2 was also an elder of the Church.

        6.        Person 3 was a resident of the Eastern District of Pennsylvania, and owner of Company 2, a mobile car detailing service. Person 3 was also an elder of the Church.

        7.        Suntrust Bank was a financial institution headquartered in Atlanta, Georgia and insured by the FDIC with certificate number 867. On or about December 9, 2019, Suntrust Bank merged with BB&T Bank, a financial institution headquartered in Winston-Salem, North Carolina, and insured by the FDIC with certificate number 9846. The resulting bank was known as Truist Bank, a financial institution headquartered in Charlotte, North Carolina, and insured by the FDIC with certificate number 9846.

        8.        Celtic Bank was a financial institution headquartered in Salt Lake City, Utah and insured by the FDIC with certificate number 57056. Celtic Bank was an approved lender of Paycheck Protection Program funds.

        9.        Cross River Bank was a financial institution headquartered in Teaneck, New Jersey and insured by the FDIC with certificate number 58410. Cross River Bank was an approved lender of Paycheck Protection Program funds.

10. Amur Equipment Finance was an approved lender of Paycheck Protection Program funds headquartered in Nebraska.

## The Small Business Administration

11. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy in a variety of ways, including by fostering the establishment and viability of small businesses and aiding in their economic recovery after community disasters.

12. As part of its efforts, the SBA provided for business loans through banks, credit unions, and other lenders. Those loans had government-backed guarantees.

## The CARES Act and PPP Program

13. Enacted in March 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion in additional PPP funding. In December 2020, Congress authorized over $280 billion in another round of PPP funding, which was available to businesses that had already obtained a PPP loan during 2020. These loans are referred to as "second draw" loans.

14. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the business, through its authorized representative, was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to include documentation showing their payroll expenses and other information as part of the application.

15. A PPP loan application was required to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own funds, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA. PPP loan proceeds were to be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

16. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia and/or Oregon.

Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business

## THE SCHEME

17.     From in or about May 2020 through in or about November 2021, in the Eastern District of Pennsylvania and elsewhere, defendant

**ROOLDY ALEXANDRE,**

along with Christella Dorval and Person 1, knowingly executed and intended to execute a scheme to defraud victims Church 1, Person 2, Person 3, the SBA, Celtic Bank, Cross River Bank, and Amur Equipment Finance.

## MANNER AND MEANS

It was part of the scheme that:

### Church 1's Celtic Bank PPP Loan

18.     Defendant ROOLDY ALEXANDRE—having, in the Spring of 2020, sought a PPP loan from TD Bank using accurate information about the Church's annual revenue and number of employees, but having been approved for a loan of only approximately $20,000—sought and obtained from Christella Dorval the contact information of Person 1. Defendant ALEXANDRE solicited Person 1's assistance in filing a PPP loan application on behalf of the Church. Defendant ALEXANDRE and Person 1 agreed that defendant ALEXANDRE would pay Person 1 a fee of 25% of the PPP loan, in exchange for Person 1's assistance.

19.     On or about June 18, 2020, Person 1 submitted, on behalf of defendant ROOLDY ALEXANDRE and Church 1, a PPP loan application to Celtic Bank. The loan application falsely asserted that Church 1 had twelve employees, and an average monthly payroll

of $104,670.

20. As part of the June 18, 2020, PPP loan application to Celtic Bank, Person 1 also submitted an IRS Form 940 for tax year 2019, which falsely asserted that Church 1 had paid $1,598,400 to its employees that year.

21. As a result of the false PPP loan application to Celtic Bank, defendant ROOLDY ALEXANDRE was approved for a PPP loan in the amount of $261,675, which was more than double Church 1's total annual revenue from 2019.

22. Defendant ROOLDY ALEXANDRE wired approximately 25% of the loan proceeds to Person 1, as payment of the agreed-upon fee.

23. Defendant ROOLDY ALEXANDRE was advised by Person 1 that, in order to have the PPP loan forgiven, 60% of the proceeds needed to have been used for payroll.

24. In an effort to make it appear as though the PPP loan proceeds were being used to fund the Church's payroll, defendant ROOLDY ALEXANDRE employed a payroll company recommended by Person 1 and then, using that payroll system, distributed the PPP loan proceeds to twelve members of the Church. Defendant ALEXANDRE directed these members to return to him the funds they received from the payroll company.

25. Defendant ROOLDY ALEXANDRE spent most of the PPP loan proceeds for his own benefit.

### Church 1's Amur Equipment Finance PPP Loan

26. On or about February 24, 2021, defendant ROOLDY ALEXANDRE submitted to Amur Equipment Finance, Inc. a second draw PPP loan application in the name of Church 1.

27. In the second draw application, defendant ROOLDY ALEXANDRE falsely asserted that Church 1 had 12 employees, annual revenue of $1,256,040, and an average annual payroll of $104,670.

28. Defendant ROOLDY ALEXANDRE also submitted the same false IRS Form 940 that had been submitted in support of Church 1's PPP loan application to Celtic Bank.

29. As a result of the false PPP loan application to Amur Equipment Finance, a PPP loan was approved in the amount of $250,000.

30. Defendant ROOLDY ALEXANDRE, intending to take 25% of the second draw loan proceeds for himself, falsely told the elders of Church 1 that he had retained a consultant to assist him in preparing the second draw loan application, to whom the Church owed 25% of the second draw loan proceeds. To conceal the fact that he was taking the 25% payment for himself, defendant ROOLDY ALEXANDRE conspired with Christella Dorval to have the 25% payment—totaling $62,500—directed to the Vitality Companies' bank account.

31. Christella Dorval then returned the 25% payment to defendant ROOLDY ALEXANDRE in multiple, small checks and other financial transactions designed to conceal the fact that the payments were merely return of the Church's second draw PPP loan. Dorval included false notations on some of the checks she wrote to defendant ALEXANDRE, including an April 1, 2021, check in the amount of $4,990 on which Dorval wrote "Home improvements" and an April 6, 2021, check in the amount of $7,250 on which Dorval wrote "Home improvement." Dorval also falsely characterized several of the checks as a "donation" or "contribution" to Church 1.

**Person 2's Cross River Bank PPP Loan**

32. Defendant ROOLDY ALEXANDRE approached Person 2 and offered to coordinate between Person 2 and defendant ALEXANDRE's purported consultant, whom defendant ALEXANDRE claimed lived in Florida, in order to obtain a PPP loan on behalf of Company 1.

33. Contrary to what he told Person 2, defendant ROOLDY ALEXANDRE himself, and not a consultant in Florida, intended to, and did, prepare the PPP loan application, which he submitted to Cross River Bank on or about March 8, 2021.

34. Defendant ROOLDY ALEXANDRE falsely asserted on the PPP loan application that Company 1 had eight employees, and an average monthly payroll of approximately $24,207.

35. As a result of the false statements, defendant ROOLDY ALEXANDER obtained a PPP loan in the amount of $60,517 for Company 1.

36. Defendant ROOLDY ALEXANDRE advised Person 2 that, in order for the loan to be forgivable, Person 2 should arrange to distribute the PPP loan proceeds through payroll, which Person 2 did.

37. In order to conceal his own role in the PPP loan application, defendant ROOLDY ALEXANDRE directed Person 2 to transmit the 25% fee to a bank account controlled by Christella Dorval. Defendant ALEXANDRE caused Person 2 to believe that the 25% payment was being transmitted to the purported Florida consultant, when, in fact, Dorval simply returned the funds to defendant ALEXANDRE, in numerous, small transactions designed to conceal the source of the funds.

**Person 3's Amur Equipment Finance PPP Loan**

38. Defendant ROOLDY ALEXANDRE approached Person 3 and, like defendant ALEXANDRE's arrangement with Person 2, offered to coordinate between Person 3 and defendant ALEXANDRE's purported consultant, whom defendant ALEXANDRE claimed lived in Florida, in order to obtain a PPP loan on behalf of Company 2.

39. Contrary to what he told Person 3, defendant ROOLDY ALEXANDRE himself, and not a consultant in Florida, intended to, and did, prepare the PPP loan application, which he submitted to Amur Equipment Finance, LLC, on or about February 11, 2021.

40. Defendant ROOLDY ALEXANDRE falsely asserted on the PPP loan application that Company 2 had eight employees, and an average monthly payroll of approximately $36,105.

41. As a result of the false statements, defendant ROOLDY ALEXANDER obtained a PPP loan in the amount of $90,262 for Company 2.

42. Defendant ROOLDY ALEXANDRE advised Person 3 that, in order for the loan to be forgivable, Person 3 should arrange to distribute the PPP loan proceeds through payroll, which Person 3 did.

43. In order to conceal his own role in the PPP loan application, defendant ROOLDY ALEXANDRE directed Person 3 to transmit the 25% fee to a bank account controlled by Christella Dorval. Defendant ALEXANDRE caused Person 3 to believe that the 25% payment was being transmitted to the purported Florida consultant, when, in fact, Dorval simply returned the funds to defendant ALEXANDRE in numerous, small transactions designed to conceal the source of the funds.

44. On or about the dates set forth below, in the Eastern District of Pennsylvania and elsewhere, defendant

**ROOLDY ALEXANDRE,**

for the purpose of executing the scheme described above caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, each transmission constituting a separate count:

| COUNT | DATE | STARTING POINT | ENDING POINT | NATURE |
|---|---|---|---|---|
| 1 | March 8, 2021 | Philadelphia, PA | Cross River Bank's servers outside the Commonwealth of Pennsylvania | Transmission of Person 2's PPP Loan application by defendant ROOLDY ALEXANDRE to Cross River Bank |
| 2 | February 19, 2021 | Philadelphia, PA | Suntrust Bank's servers outside the Commonwealth of Pennsylvania | A wire transfer of funds executed by Person 3, at the request of defendant ROOLDY ALEXANDRE, from TD Bank branch 387 to a Suntrust Bank account controlled by Christella Dorval |

All in violation of Title 18, United States Code, Section 1343.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 1343, described in Counts One and Two of this information, defendant

## ROOLDY ALEXANDRE

shall forfeit to the United States of America any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of such offenses.

2. If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18 United States Code, Section 982(a)(1)(C).

_____
**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

No. _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

v.

ROOLDY ALEXANDRE

INFORMATION

Counts
18 U.S.C. § 1343 (wire fraud – 2 counts); Notice of forfeiture

A true bill.

_____
Foreman

Filed in open court this _____ day,
of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____